**ASSOCIATION FOR DISABLED AMERICANS, INC., Daniel Ruiz, Jorge Luis Rodriguez, et al., Plaintiffs,**

v.

**AMOCO OIL COMPANY, BP Exploration & Oil Inc. and Atlantic Richfield Company, Defendants.**

No. 98–2002–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 19, 2002.

Order denying motion to amend
May 21, 2002.

William Nicholas Charouhis, William N. Charouhis & Associates, Miami, FL, for plaintiffs.

Jonathan E. Perlman, Genovese Joblove & Battista, Miami, FL, Donna M. Welch, Richard C. Godfrey, Barry E. Fields, Kirkland & Ellis, Chicago, IL, for defendants.

### ORDER CERTIFYING SETTLEMENT CLASS AND APPROVING CONSENT DECREE

GOLD, District Judge.

THIS CAUSE is before the Court pursuant to the Court's June 7, 2001 Order Concerning Settlement Fairness Hearing, and the parties' June 2, 2001 submission of a *Joint Motion for Order Granting Preliminary Approval of Proposed Consent Decree; Conditionally Certifying the Settlement Class; Directing Notice to the Class; and Scheduling Fairness Hearing.* The Court conducted a fairness hearing on February 15, 2002. At the Fairness Hearing, the parties further clarified their intention relative to the Proposed Consent Decree by executing a further stipulation relative to Section 21.2 thereof. By this stipulation the parties clarified that their agreement is to release only statutory damages, meaning, minimum or liquidated damages available under some state laws that require no proof of actual damages suf-

fered but only violation of applicable accessibility laws.

The Court, after having considered the motion, written objections to the proposed consent decree, the further stipulation, the parties' response thereto, the evidence presented at the fairness hearing, argument of counsel, pertinent portions of the record, and otherwise being fully advised in the premises, hereby

**ORDERS** and **ADJUDGES** that the joint motion is **GRANTED**, the class is certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, and the proposed Consent Decree is approved.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Plaintiffs, on behalf of themselves and all other similarly situated persons, i.e., persons with disabilities as that term is defined by the ADA, filed a class action complaint against BP,[1] pursuant to Fed.R.Civ.P. 23, alleging accessibility violations of the ADA at domestic gasoline stations and convenience stores owned, leased, or operated by BP. Plaintiffs alleged that BP violated Title III of the ADA by failing to make BP gasoline stations and convenience stores accessible to customers with disabilities and sought a permanent injunction compelling compliance with the ADA. (DE 1).

BP answered the complaint and denied that it had violated the ADA. Throughout the litigation and settlement process, BP has denied any violation of the ADA. (DE 8).

In February 1999, BP and Plaintiffs began settlement negotiations. ( Charouhis Decl., App. Ex. "C" ¶ 10; DiLuigi App. Ex. "D" ¶ 10). Shortly afterwards, this Court stayed the action to allow the parties to pursue settlement negotiations. (DE 33). The Court thereafter held regular status conferences and oversaw the parties' progress toward settlement. (DE 40, DE 42, DE 44, DE 46, DE 49, DE 56).

---

1. The action initially named Amoco Oil Company as the sole defendant. Because Amoco Oil is a subsidiary of BP America Inc., as are BP Exploration & Oil Inc. and Atlantic Richfield Co., the Complaint was later amended to include all three BP America subsidiaries as defendants. Amoco Oil Company and BP Exploration & Oil Inc. have since merged to become BP Products North America Inc. (App. Ex. "B" ¶ 2; DE 53).

The parties engaged in intense arms-length negotiations for the next two years over accessibility issues at gasoline stations owned, operated or leased by BP. The parties each hired premier architectural and consulting firms with extensive experience in addressing ADA compliance and accessibility issues. (Moorehead Decl., App. Ex. "B" ¶ 6; Charouhis Decl., App. Ex. "C" ¶ 10; DiLuigi App. Ex. "D" ¶¶ 2–10; Brennan Decl., App. Ex. "E" ¶¶ 3–6). The prior experience of the consulting firms involved in these negotiations includes participation in numerous class actions claiming ADA violations at gasoline stations or convenience stores, resulting in court approved consent decrees. (DiLuigi App. Ex. "D" ¶ 9; Brennan App. Ex. "E" ¶¶ 4, 5).

Throughout the negotiating process, the parties conducted discovery informally and cooperated in an extensive exchange of information. ( Charouhis Decl., App. Ex. "C" ¶ 10; DiLuigi App. Ex. "D" ¶ 10; Brennan Decl., App. Ex. "E" ¶ 7). Additionally, the parties and their experts visited and surveyed a significant number of BP stations of as many different types as possible to determine the extent of accessibility issues present in this case. (*Id.*).

As a result of this full exchange of information and investigation, the parties eventually agreed upon the terms of the Consent Decree. After performing their due diligence, the parties and their professionals concluded that the Consent Decree is eminently fair and reasonable, and will ensure that all stations are fully accessible to the disabled. (*Id.;* Charouhis Decl., App. Ex. "C" ¶ 20; DiLuigi Decl., App. Ex. "D" ¶ 18; Brennan Decl., App. "E" ¶ 15; Brother Decl., App. Ex. "J" ¶ 5; Ruiz Decl., App. Ex. "K" ¶ 8; Rodriguez App. Ex. "L" ¶ 8).

As set forth below, the Consent Decree contains a comprehensive analysis of accessibility issues at BP gasoline stations and convenience stores, as well as a clear and detailed enhancement program guaranteeing that Defendant's 2,800 facilities throughout the nation[2] will be fully accessible to the disabled under one consistent standard. (App. Ex. "A" at Ex. "3"; Charouhis Decl.,

App. Ex. "C" ¶¶ 12, 20–22; DiLuigi Decl., App. Ex. "D" ¶¶ 18, 19, 20; Watson Decl., App. Ex. "E" ¶¶ 16–35; Brother Decl., App. Ex. "J" ¶ 4; Ruiz Decl., App. Ex. "K" ¶ 8; Rodriguez Decl., App. Ex. "L" ¶ 8). Implementing this program will cost BP upward of $45 million and will require the mobilization and dedication of thousands of employees and independent contractors across many disciplines. (Watson Decl., App. Ex. "F" ¶ 2).

On June 7, 2001, the parties filed the Joint Motion, requesting that the Court conditionally certify the Plaintiff settlement class under Fed.R.Civ.P. 23(b), authorize notice to class members, and preliminarily approve the Consent Decree. (DE 61). On June 11, 2001, the Court determined that the class satisfied the requirements for certification under Fed.R.Civ.P. 23(a) and 23(b)(2), and that the Consent Decree was fair, reasonable, adequate, and not the result of collusion. Accordingly, it granted the Joint Motion. (DE 62). The Court ordered that the parties provide class members with notice as set forth in the Consent Decree and that any objections to the Consent Decree be filed by September 28, 2001. (*Id.*). The Court conducted a fairness hearing on February 15, 2002. (*Id.*).

The parties timely provided class members with the approved notice. ( Moorehead Decl., App. Ex. "B" ¶¶ 2–5; Watson Decl., App. Ex. "F" ¶¶ 4–8; Visser Decl., App. Ex. "G" ¶¶ 2–5; Pines Decl., App. Ex. "H" ¶ 5). The notice campaign included posting a notice containing a summary of the Consent Decree and the September 28, 2001 deadline to file objections (the "Notice") on gasoline pumps and cash registers at every covered gasoline station and convenience store. Defendant published the Notice in *The New York Times, USA Today, Miami Herald, The Chicago Tribune, The Houston Chronicle,* asked disability groups to post the notice on disability rights web sites, and sent the Notice to numerous disability rights organizations. (*Id.;* App. Ex. "A" ¶¶ 20.4, 20.5, 20.6).

Despite the extensive notice provided, no objections were received by the September

---

**2.** The Consent Decree excludes gasoline stations and convenience stores located in California that are subject to a court approved consent decree in

another action. (*Molski v. Atlantic Richfield Corp.,* No. 98cv951–IEG (JAH) (N.D.Cal. Dec. 6, 2000)(appeal pending)).

28, 2001 deadline, and no class member has ever objected. Having received no objections to the Consent Decree, and in order to ensure that the Consent Decree's tight deadlines could be met, the parties implemented the first phases of the Consent Decree. (Watson Decl., App. Ex. "F" ¶¶ 22–25).

On January 9, 2002, 103 days after the deadline for objections, the parties received objections from a consortium of state protectional advocacy agencies ("Agencies"), followed 15 days later by the objections of the American Council of the Blind ("Council"). Neither Objector group is a class member, nor has either demonstrated that it represents an actual class member. The parties provided Council, who was on the Court approved notice list, with a copy of the Notice in June. (App. Ex. "A" ¶ 20 and at Ex. "12"; Moorehead Decl., App. Ex. "B" ¶¶ 2–3). Council's attorney in this case also contacted Plaintiffs' counsel to discuss the Consent Decree in June, 2001. (Charouhis Decl., App. Ex. "C" ¶ 16).

The parties also in June provided the Notice to Agencies through their National Association of Protection and Advocacy, Inc.,[3] also on the Court approved notice list. (*Id.*). The Association contacted Plaintiffs' counsel within days and requested a copy of the Consent Decree, which Mr. Charouhis provided. (Charouhis Decl., App. Ex. "C" ¶¶ 15, 18). Immediately afterward, in July 2001, the office of Objector Agencies' Florida counsel contacted Plaintiffs' counsel to discuss the Consent Decree. (Charouhis Decl., App. Ex. "C" ¶ 15). Agencies did not request an additional copy of the Consent Decree. (Charouhis Decl., App. Ex. "C" ¶ 15).

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. THE SETTLEMENT CLASS COMPLIES WITH FEDERAL RULE OF CIVIL PROCEDURE 23(a) AND 23(b)(2)

The prerequisites to class certification are (1) numerosity; (2) commonality; (3) typicali-

ty; and (4) adequacy of representation. Fed. R.Civ.P. 23(a); *Amchem Prods. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Access Now, Inc. v. AHM CGH, Inc.,* No. 98–3004–CIV–GOLD–SIMONTON, 2000 WL 1809979 at *1, 2001 U.S. Dist. LEXIS 12876 at *5–6; *Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.,* 197 F.R.D. 522, 525 (S.D.Fla. 2000).

In this regard, Courts repeatedly have held that class actions brought pursuant to Title III of the Americans With Disabilities Act satisfy all prerequisites for certification under Fed.R.Civ.P. 23(a), and 23(b)(2). (DE 61 at 7–15). *See Ambulatory Surgery,* 197 F.R.D. 522 (certifying class of disabled persons as defined by ADA in U.S. in action against medical care facilities for failing to comply with Title III of ADA); *Access Now, Inc. v. AHM CGH, Inc.,* No. 98–3004–CIV–GOLD/SIMONTON, 2000 WL 1809979, 2000 U.S. Dist. LEXIS 14788 (S.D.Fla. July 12, 2000)(same); *Molski v. Atlantic Richfield Corp.,* No. 98–CV–951 IEG (JAH) (S.D.Cal. Dec. 6, 2000)(certifying class of disabled persons in action against gasoline stations and convenience stores for failing to comply with Title III of the ADA and California law)(appeal pending); *Colorado Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354 (D.Colo.1999)(certifying class of persons who use wheelchairs and scooters in action against fast food chain for failing to comply with Title III of ADA and Colorado law); *Lawson v. Chevron USA, Inc.,* No. C–99–0529–CAL (N.D.Cal.1999)(DE 61 at Ex. B)(certifying class consisting of all disabled persons as defined by the ADA in the U.S. in national action against gasoline stations and convenience stores for failing to comply with Title III of the ADA); *Greener v. Shell Oil Co.,* No. C–98–2425–CAL (N.D.Cal. 1998)(same)(DE 61 at Ex. C); *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 460 (N.D.Cal.1994), *modified,* 158 F.R.D. 439, 460 (N.D.Cal.1994)(certifying

---

**3.** The National Association of Protection and Advocacy, Inc. ("NAPAS"), is Agencies' national membership association of which each Objector Agency is a member. (*See* App. Ex. "N"). NA-

PAS' purpose is to "facilitate coordination of its members," and "NAPA has daily contact with [Agencies] ..." (*Id.* at 1).

class of disabled persons who used wheelchairs or walking aids against movie theatres for failing to comply with Title III of ADA and California law); *Leiken v. Squaw Valley Ski Corp.,* Nos. CIV. S–93–505 LKK and CIV. S–93–1622 LKK, 1994 WL 494298, 1994 U.S. Dist. LEXIS 21281 (E.D.Cal. June 28, 1994)(certifying class of disabled persons denied access to cable car at resort in violation of Title III of ADA); *Civic Ass'n of the Deaf v. Giuliani,* 915 F.Supp. 622, 634 (S.D.N.Y.1996)(certifying class of hearing-impaired persons suing under Title III of ADA to prevent defendants from replacing fire alarm boxes); *Anderson v. Pennsylvania Department of Pub. Welfare,* 1 F.Supp.2d 456, 462 (E.D.Pa.1998)(certifying class of persons with mobility and/or vision impairments in suit under the Title III of ADA to obtain accessibility improvements in managed health-care program); *Clark v. California,* No. C96–1486 FMS, 1998 WL 242688, 1998 U.S. Dist. LEXIS 6770 (N.D.Cal. May 11, 1998)(refusing to decertify class of developmentally-disabled inmates seeking accessibility improvements in prison system pursuant to ADA); *Neff v. VIA Metro. Transit Auth.,* 179 F.R.D. 185, 196 (W.D.Tex.1998)(certifying class of individuals with disabilities covered by the ADA and Rehabilitation Act seeking greater accessibility of defendants' transportation services and facilities); *Thrope v. Ohio,* 173 F.R.D. 483, 491 (S.D.Ohio 1997)(certifying class of Ohio residents who purchased handicap parking placards, seeking, under ADA, to force defendants to provide such placards without charge); *Berlowitz ex. rel. Berlowitz v. Nob Hill Masonic Mgmt.,* No. C–96–01241 MHP, 1996 WL 724776, 1996 U.S. Dist. LEXIS 22599 (N.D.Cal. Dec.6, 1996)(certifying class of persons with physical disabilities seeking removal of architectural barriers under Title III of ADA and California law); *Guckenberger v. Boston Univ.,* 957 F.Supp. 306 (D.Mass.1997)(certifying class of students with learning disabilities claiming discrimination in violation of ADA).

In these decisions, federal courts, including this one, have held that classes of disabled persons seeking compliance with accessibility laws satisfied Fed.R.Civ.P. 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *Id.* These courts properly concluded that, because the primary relief sought in a complaint for greater accessibility is injunctive in nature, the action should be certified under provision 23(b)(2)—a provision expressly created for class actions seeking predominately injunctive relief, especially civil rights type cases. *Amchem,* 521 U.S. at 614, 117 S.Ct. 2231 (citing Adv. Comm. Notes to Rule 23(b)(2)).

### 1. The Parties Have Satisfied the Numerosity Requirement

■ The test for numerosity is whether "the class [is] so numerous that joinder of all members is impracticable." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,* 637 F.2d 1014, 1022 (5th Cir.1981); Fed.R.Civ.P. 23(a)(1). The Court need not make specific findings as to the number of persons in the putative class, but rather "may examine statistical data and then draw reasonable inferences from the facts in determining whether the numerosity requirement has been met." *AHM,* 2000 WL 1809979 at *2, 2000 U.S. Dist. LEXIS 14788 at *6 (quoting *Pottinger v. Miami,* 720 F.Supp. 955 (S.D.Fla.1989)(citing *Padron v. Feaver,* 180 F.R.D. 448, 453 (S.D.Fla.1998)(certifying class of persons denied supplemental security income benefits, and extrapolating from national statistics regarding the number of persons similarly situated)(other citations omitted))).

According to the latest U.S. Census Bureau's Population Reports, issued February 2001, in 1997, 52.6 million people, or 19.7 percent of he U.S. population, had some level of disability as defined by the ADA, and 33.0 million people (12.3 percent of the population) had a severe disability. (*See* U.S. Census Bureau, Americans With Disabilities: 1997, attached as Ex. "G" to Joint Motion). Among the population 15 years old and over, 2.2 million used a wheelchair. (*Id.*).

The vast number of persons within the putative Plaintiff class in this case demonstrated that joinder is impracticable. *AHM,* 2000 WL 1809979 at *2, 2000 U.S. Dist. LEXIS 14788 at *7; *see Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439,

448 (N.D.Cal.), *modified,* 158 F.R.D. 439 (1994); *see also Davoll v. Webb,* 160 F.R.D. 142 (D.Colo.1995). The putative Class's inclusion of disabled persons throughout the United States further demonstrates satisfaction of the numerosity requirement. *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859 (11th Cir.1986). Finally, the numerosity test has been satisfied because the instant class action serves the express purpose of the ADA—"a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *AHM,* 2000 WL 1809979 at *2, 2000 U.S. Dist. LEXIS 14788 at *7. For all of these reasons, this Court finds that Rule 23(a)(1)'s numerosity requirement has been satisfied.

### 2. The Parties Have Satisfied Rule 23(a)(2) and (3)'s Commonality and Typicality Requirements

■ "The commonality and typicality requirements of Rule 23(a) tend to merge." *AHM,* 2000 WL 1809979 at *3, 2000 U.S. Dist. LEXIS 14788 at *8 (quoting *Griffin v. Carlin,* 755 F.2d 1516 (11th Cir.1985)) (citation omitted). Fed.R.Civ.P. 23(a)(2) requires this Court to determine whether "there are questions of law or fact common to the class," and Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." All questions of fact and law, however, need not be common to satisfy the commonality and typicality rules. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir. 1986)("The claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs."); *Appleyard v. Wallace,* 754 F.2d 955 (11th Cir.1985) (same); *Johnson v. American Credit Co.,* 581 F.2d 526, 532 (5th Cir.1978)(Rule 23 "does not require that all the questions of law and fact raised by the dispute be common."). In fact, the "commonality requirements will be satisfied if the named plaintiffs share at least one question of fact or law with the grievance of the prospective class." *Ambulatory Surgery,*

197 F.R.D. at 526 n. 2 (citations and quotation omitted).

Class Plaintiffs by their complaint sought a permanent injunction compelling BP's gasoline stations and convenience stores to comply with the ADA. Plaintiffs' allegations of common discriminatory practices of ADA noncompliance, as a matter of law, satisfy the requirement that the representative plaintiffs "share at least one question of fact or law with the grievances of the protective class." *Id.; see Amchem,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689; *see, e.g., Arnold,* 158 F.R.D. at 448 (accommodation of disabled at theaters and adequacy of those accommodations are issues of law and fact common to all affected disabled persons).

Objectors argue class Plaintiffs have failed to satisfy Rule 23's commonality and typicality requirements, because no representative plaintiff is hearing or sight impaired. (DE 65 at 16). Contrary to this argument, it is settled under Rule 23(a) that the representative plaintiffs need not have the identical disabilities as the class. *Neff,* 179 F.R.D. at 194; *see AHM,* 2000 WL 1809979 at *1, 2000 U.S. Dist. LEXIS 14788 at *3 (S.D.Fla. July 12, 2000)(typicality and commonality met despite the fact that absent class members might have different disabilities); *Ambulatory Surgery,* 197 F.R.D. at 527–28 (commonality and typicality met despite differences in physical disabilities, because "the representative Plaintiffs have the same interests and suffer the same injuries as the class members in that they are allegedly denied access to the same facilities"); *Arnold,* 158 F.R.D. at 450 ("in a public accommodation suit ... the interests, injuries, and claims of the class members are, in truth, identical such that any class member could satisfy the typicality requirement for class representation").

As the *Neff* court explained when it likewise found commonality and typicality to exist even though the representative plaintiffs' disabilities were not identical to those of the entire class:

> The named plaintiffs are individuals with disabilities who arguably cannot fully participate and benefit from the facilities, services, programs and activities offered by

the defendants. These plaintiffs assert injuries in the same general manner as all other class members because defendants allegedly have failed to modify their facilities .... Nor is the fact that class members may suffer from different forms of disabling infirmities [of any consequence]. Each member of the class contends loss as a result of defendants' alleged failures and each class member has the same interest in pursuing this settlement with the end result being a change or modification of the challenged practices.

*Neff,* 179 F.R.D. at 194.

Here, each individual class member would raise the same claims as the representative Plaintiffs against this same Defendant, and seek the same remedy—injunctive relief for compliance with the ADA, including the removal of structural and communication barriers to access. Clearly, commonality and typicality are sufficiently established for certification of this class. *AHM,* 2000 WL 1809979 at *2, 2000 U.S. Dist. LEXIS 14788 at *8–12; *Ambulatory Surgery,* 197 F.R.D. at 528; *Arnold,* 158 F.R.D. at 450; *Giuliani,* 915 F.Supp. at 633.

### 3. The Representatives Plaintiffs and Their Counsel Adequately Represent the Plaintiff Class

■ Rule 23(a)'s final prerequisite is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Thus, the Court is required to evaluate any conflicting interests of the class representative and the adequacy of class counsel. *AHM,* 2000 WL 1809979, at *2, 2000 U.S. Dist. LEXIS 14788 at *13; *Ambulatory Surgery,* 197 F.R.D. at 528; *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 386 (D.Colo.1993). Adequate representation is presumed in the absence of contrary evidence. *Id.*

■ Here, as discussed above, the claims of the class representatives are truly identical to those of absent class members, because each class representative seeks to make Defendant's gasoline stations fully accessible as required by the ADA. *Arnold,* 158 F.R.D. at 450; *Giuliani,* 915 F.Supp. at 633; *AHM,* 2000 WL 1809979 at *3, 2000 U.S. Dist.

LEXIS 14788 at *13. The requested injunctive relief will provide substantially equal benefits and relief to all members of the class through increased accessibility and the coordinated removal of physical and communication barriers. *See Ambulatory Surgery,* 197 F.R.D. at 528. Consequently, even though the representative Plaintiffs may not include individuals with every possible disability, because their interests are not antagonistic to other class members, their adequacy is presumed. *See, e.g., Neff,* 179 F.R.D. at 195 ("as long as 'all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.'") (citations and quotation omitted); *Ambulatory Surgery,* 197 F.R.D. at 528 (same). This is especially true here given the additional presence of Plaintiff Association For Disabled Americans, whose members include persons with all types of disabilities, including vision and hearing impairments. (Charouhis Decl., App. Ex. "C" ¶ 6).

The vigor with which a named representative and his counsel will pursue the class claims is assessed by considering the competency of counsel and the rationale for not pursuing further litigation. *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594 (S.D.Fla.1991). Class counsel is an experienced plaintiff's attorney in the disability rights sector, and practices almost exclusively in that area. (Charouhis Decl., App. Ex. "C" ¶ 7). Class counsel has demonstrated the competence and resources necessary to prosecute class actions. (*Id.* ¶ 7). The evidence is uncontroverted that negotiations have been arms-length and extensive. (Charouhis App., Ex. "C" ¶ 10). The rationale for not pursuing further litigation is that given the extraordinary relief obtained, continued litigation would not be in the best interests of any party, including absent class members. Rather, continued litigation would only serve to delay class relief in circumstances where it does not appear equivalent relief will even be possible if the matter is tried. Because the interests of the entire class are fairly and adequately represented,

the fourth prerequisite of Rule 23(a) is satisfied. *AHM*, 2000 WL 1809979 at \*3, 2000 U.S. Dist. LEXIS 14788 at \*12–14; *Ambulatory Surgery*, 197 F.R.D. at 528.

Objectors' primary complaint on this point is that the Consent Decree supposedly fails to address the needs of class members with visual or hearing impairments. In truth, the Consent Decree expressly addresses the issues affecting the hearing and sight impaired and provides enhancements for their specific benefit, including tactile signage, writing surfaces (for written communications), volume control hearing compatible handsets at pay telephones, etc. (App. Ex. "A" ¶¶ 7.3, I.1, G.2, E.2). Plainly, the class representatives and their counsel have demonstrated that they satisfy Rule 23(a)'s adequacy requirement.

#### 4. Certification of This Class Action for Purely Injunctive Relief Was Properly Sought Under Rule 23(b)(2)

■ In addition to satisfying the requirements of Rule 23(a) above, for a class to be certified, the action must also qualify for class treatment under one of the provisions of Rule 23(b). Fed.R.Civ.P. 23; *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. The only requirement for class treatment under Rule 23(b)(2) is that the relief sought in the complaint be predominantly injunctive or declaratory in nature. *See* Fed.R.Civ.P. 23(b)(2); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir.2001). The Advisory Committee Notes to the 1966 amendments to Rule 23 provide that "prime examples" of cases certifiable under 23(b)(2) cases are those, like this one, in the civil rights field "against parties charged with unlawful, class-based discrimination...." *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231 (citing Adv. Comm. Notes); *AHM*, 2000 WL 1809979 at \*4, 2000 U.S. Dist.

LEXIS 14788 at \*15 (same); *Ambulatory Surgery*, 197 F.R.D. at 529 (same); *Colorado Cross–Disability Coalition*, 184 F.R.D. at 361 (same). Thus, Rule 23(b)(2) clearly applies where injunctive or declaratory relief is the primary or exclusive relief sought.[4] *Id.; Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322 (N.D.Ill.1995).

Here, the Class Plaintiffs sought exclusively injunctive relief based upon their allegations of class-based discrimination for noncompliance with a federal civil rights statute. This case thus fits squarely within the ambit of cases for which Rule 23(b)(2) was created. Accordingly, class certification pursuant to Rule 23(b)(2) is appropriate.

Contrary to the above authorities, Agencies claim the Consent Decree's limited release of state accessibility law damage claims renders this action one that seeks predominantly damages, not injunctive relief, contrary to Rule 23(b)(2)'s mandate. This argument fails for numerous reasons.

First, as the foregoing authorities make plain, the propriety of certification under Rule 23(b)(2) is determined solely by looking at whether the Plaintiffs predominantly sought injunctive relief in the complaint. Accordingly, the contents of the Consent Decree, including its release provision, cannot alter the fact that this case satisfies Rule 23(b)(2).

Agencies' argument also must fail because the Release does not bar actual damage claims. Rather, the only damage claims covered are claims for statutory damages under the laws of those few states that provide for them. By statutory damages, the parties mean only to bar class members from claiming minimum or liquidated damages under statutes that require no proof for recovery. *See* Joint Response to Objections at pp. 28–29. Courts repeatedly have held that even if

---

4. Rule 23(b)(2) continues to apply even if the complaint also seeks monetary damages, *so long as the action is not "wholly or predominately" for money damages. Linney v. Cellular Alaska P'ship.*, 151 F.3d 1234, 1240 (9th Cir.1998); *Hoffman v. Honda of Am. Mfg., Inc.*, 191 F.R.D. 530, 535–37 (S.D.Ohio 1999); *see* Adv. Comm. Notes to Rule 23 (suggesting drafters believed some form or amount of monetary relief would be permissible in a (b)(2) class action); *Parker v.*

*United Steelworkers of Am.*, 642 F.2d 104, 107 (5th Cir.1981) (same); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 n. 3 (5th Cir.1998) (same); *Arnold*, 158 F.R.D. at 450–51 (holding that where class plaintiffs' complaint sought injunctive relief under ADA, and for damages under analogous California statute, damage claim did not predominate and class should be certified under Rule 23(b)(2)).

sought in the class plaintiffs' complaint (which they were not in this case), such damages are incidental and do not render certification under Rule 23(b)(2) inappropriate where the class also seeks injunctive relief under the ADA. *Arnold,* 158 F.R.D. at 450–51, 461–62; *Colorado Cross–Disability Coalition,* 184 F.R.D. at 361–62; *see Allison,* 151 F.3d at 415 (mentioning statutory damages under California disability access statute as example of damages which a class may seek in action properly certifiable under Rule 23(b)(2)).

The Plaintiff class satisfies all of the requirements of Rule 23(a) and 23(b). As such, final class certification is appropriate.

### 5. Notice Was Appropriate Under Rule 23

This Court properly certified the Plaintiff class (conditionally) under Rule 23(b)(2). Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions. *Eisen v. Carlisle,* 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Fontana v. Elrod,* 826 F.2d 729, 732 (7th Cir. 1987)(same); *AHM,* 2000 WL 1809979 at *4, 2000 U.S. Dist. LEXIS 14788 at * 19–21; *Sikes v. American Tel. & Tel. Co.,* 841 F.Supp. 1572, 1579 (S.D.Ga.1993); *Larkin Gen. Hosp. Ltd. v. American Tel. & Tel. Co.,* 93 F.R.D. 497, 501–02 (E.D.Pa.1982); *Rosen v. Price Communications Corp.,* No. 95 Civ. 5089(CSH), 1998 WL 337896 at *1, 1998 U.S. Dist. LEXIS 9198 at * 3 (S.D.N.Y. June 23, 1998).

Here, even though no notice was required and individual notice was impossible, the parties suggested and the Court approved forms of notice that were almost equivalent. Defendant posted notice on pumps and at sales points at all stations, as well as in national newspapers, as well as providing Notices to disability rights organizations. (App. Ex. "A" ¶¶ 20.4, 20.5, 20.6, 20.7). Indeed, the Notice provided is superior to that in similar actions. *See AHM,* 2000 WL 1809979, 2001 U.S. Dist. LEXIS 12876 (requiring no notice to a 23(b)(2) Title III ADA class); *Ambulatory Surgery,* 197 F.R.D. 522, (S.D.Fla.2000)

(Court's Order, dated November 28, 2000, attached to the Joint Appendix as App. Ex. "P")(only requiring notice of 23(b)(2) Title III ADA consent decree to the plaintiff and its members, as well as posting at least one notice at each of the facilities affected by the proposed settlement); *see also Lawson v. Chevron USA, Inc.,* No. C–99–0529–CAL (N.D.Cal.1999)[5]; *Greener v. Shell Oil Co.,* No. C–98–2425–CAL (N.D.Cal.1998)[6].

Clearly, the parties' efforts to notify all class members of the Consent Decree in this case, especially where no notice was required, have been exceptional. Accordingly, the class should be certified.

### B. THE PROPOSED CONSENT DECREE IS APPROVED

#### 1. Standard for Approving Class Action Settlements

■ There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977). In analyzing any settlement, "the clear policy in favor of encouraging settlements must ... be taken into account, particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals." *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir.1975) (citations omitted). A class action settlement accordingly should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984); *Cotton,* 559 F.2d at 1330; *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 537 (S.D.Fla. 1988).

■ In determining whether the settlement is fair, adequate and reasonable, the Court must consider all relevant factors, including (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recov-

---

5. *See* DE 61 at ex. B.

6. *See* DE 61 at ex. C.

ery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved. *Bennett,* 737 F.2d at 986; *Cotton,* 559 F.2d at 1330–31.

In evaluating these considerations, the Court must not try the case on the merits. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977). Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." *Id.* (citation omitted). In evaluating a settlement's fairness, "it should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Cotton,* 559 F.2d at 1330 (quotation omitted). "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Ruiz v. McKaskle,* 724 F.2d 1149, 1152 (5th Cir.1984) (quoting *Cotton,* 559 F.2d at 1330).

Even when the Court becomes aware of one or more objecting parties, the Court is not "required to open to question and debate every provision of the proposed compromise. The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Cotton,* 559 F.2d at 1331.

Moreover, where, as here, the consent decree previously has been preliminarily approved, the decree is "presumptively reasonable," and an objector must overcome a "heavy burden" to prove the settlement is unreasonable. *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983)(citing *United States v. City of Miami,* 614 F.2d 1322, 1333 (5th Cir.1980), *on reh'g,* 664 F.2d 435 (5th Cir.1981); *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1013 (7th Cir.1980)) (other citations omitted); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D.Ohio 1991). And a small number of

objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness. *Cotton,* 559 F.2d at 1331; *Bennett v. Behring Corp.,* 96 F.R.D. 343, 352–53 (S.D.Fla.1982), *aff'd,* 737 F.2d 982 (11th Cir.1984); *In re Greenman Sec. Litig.,* 622 F.Supp. 1430, 1442 (S.D.Fla. 1985); *see D'Amato v. Deutsche Bank,* 236 F.3d 78, 86–7 (2d Cir.2001); *see also In re Cendant Corp. Litig.,* 264 F.3d 201, 235 (3d Cir.2001) ("The District Court correctly found that [the small number of objectors] weighed strongly in favor of the Settlement.").

### 2. The Consent Decree Is Fair, Adequate, and Reasonable and Not the Product of Collusion

■ The primary purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2001). The Consent Decree fulfills that purpose by creating a clear and comprehensive program guaranteeing that Defendant's gasoline stations and convenience stores throughout the nation will be accessible to the disabled, as determined by application of clear, strong, consistent, enforceable standards. (App. Ex. "A"; Moorehead Decl., App. Ex. "B" ¶ 19; DiLuigi Decl., App. Ex. "D" ¶¶ 18–20; Brennan Decl., App. Ex. "E" ¶¶ 15–17). In so doing, contrary to Objectors' assertions, the Consent Decree addresses most all access issues likely to arise in gasoline stations and convenience stores. The settlement and degree of ADA compliance effected clearly are exceptional. (App. Ex. "A"; App. Ex. "A" at Exs. "3" & "5"; DiLuigi Decl., App. Ex. "D" ¶¶ 12–37; Brennan Decl., App. Ex. "E" ¶¶ 8–35).

In this case, it is the Objectors who are at odds with Congress' intent by opposing any resolution on a class basis—leaving disabled individuals with the burden of bringing multiple actions against each of BP's 2,800 gasoline stations and convenience stores. Those thousands of suits, the great majority of which will never be brought, would result in

varying and inconsistent degrees for relief, contrary to the ADA's very purpose. It is unimaginable that such lawsuits, if ever completed, would result in gasoline stations and convenience stores more accessible than provided for in the Consent Decree.

### 3. The Consent Decree Satisfies All *Bennett* Factors

In *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir.1984), the Eleventh Circuit set forth the factors that control approval of class action settlements. A review of these factors confirms that the Consent Decree is fair, adequate, and reasonable, and is not the product of collusion, and accordingly should be approved.

### a. Likelihood of Success at Trial

The first factor this Court must consider is Plaintiffs' likelihood of success at trial. *Bennett*, 737 F.2d at 986. A trial on the merits would require an examination of approximately 2,800 gasoline stations and convenience stores throughout the United States over questions including: (1) whether each station denies full and equal enjoyment and access to individuals with disabilities; (2) whether each station has made reasonable modifications when necessary to afford accommodations to individuals with disabilities; (3) whether each station has failed to remove barriers to access; and (4) whether such barrier removal is readily achievable.

Additionally, the Court would be required to address Defendant's numerous statutory defenses, including whether proposed modifications are technically feasible, virtually impossible, structurally impractical, subject to historic preservation restrictions or would pose significant risk to health or safety. Numerous disputes would also exist as to what measures, if any, are legally required to bring the stations into compliance under the developing law of the ADA and whether alternative measures provide equivalent access. (*See* DE 1 ¶¶ 12–15, 17, 19–20). Finally, absent the settlement, Defendant would oppose class certification due to the intracta-

ble management problems this national class action poses.[7] *See Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014 (11th Cir.1996)(certification improper where trial would be unmanageable); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997)(same); *Hammett v. American Bankers Ins. Co. of Fla.*, 203 F.R.D. 690 (S.D.Fla. 2001)(same).

Clearly, given Defendant's numerous significant defenses, the complexities of the case, and the developing nature of the law interpreting the ADA, the outcome of a trial on the merits is extremely uncertain.

### b. Range of Possible Recovery

The next factor this Court must consider is the range of relief Plaintiffs might obtain at trial. *See Bennett*, 737 F.2d at 986. Plaintiffs seek exclusively injunctive relief under Fed.R.Civ.P. 23(a), 23(b)(2) and the ADA. (DE 62 at 1). Plaintiffs' range of possible recovery spans from a finding of non-liability through varying levels of injunctive relief specific to individual gasoline stations and convenience stores.

### c. The Point on or Below the Range of Possible Recovery at Which a Settlement Is Fair

The next *Bennett* factor is to determine the point within the range of possible recovery at which a settlement is fair. *Bennett*, 737 F.2d at 986. Under this settlement, Defendant expects to spend approximately $45 million inspecting and modifying its gasoline stations and convenience stores to guarantee they are accessible to disabled patrons. ( Charouhis Decl., App. Ex. "C" ¶ 20; DiLuigi Decl., App. Ex. "D" ¶ 18; Brennan Decl., App. Ex. "E" ¶¶ 15–16; Watson Decl., App. Ex. "F" ¶ 2; Brother Decl., App. Ex. "J" ¶¶ 4, 5; Ruiz Decl., App. Ex. "K" ¶ 7). Accessibility is provided for throughout the stations, including to sidewalks, curb cuts, parking spaces, signage, ramps, railings, doors and gates, service areas, restrooms, public pay telephones, routes, gasoline pump is-

---

**7.** Intractable management problems, though a defense to class certification for trial purposes, is not relevant to settlement certification. *Amchem*

*Prods. v. Windsor*, 521 U.S. 591, 619, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

lands, merchandising areas, drinking fountains, seating areas, cashier counters and transaction drawers. (App. Ex. "A" at Exs. "3," "5" & "7"). Many of the items for which accessibility is being guaranteed are not addressed in the Americans with Disabilities Act Access Guidelines ("ADAAG")[8], and therefore are not required under the ADA. (App. Ex. "A" Consent Decree; DiLuigi Decl., App. Ex. "D" ¶¶ 21–23; Brennan Decl., App. Ex. "E" ¶¶ 18, 20). Similarly, the Consent Decree imposes requirements on Defendant's older stations that are not required under ADAAG. (App. Ex. "A"; DiLuigi Decl., App. Ex. "D" ¶¶ 21–22; Brennan Decl., App. Ex. "E" ¶ 18). *Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.*, 146 F.Supp.2d 1334, 1336 (S.D.Fla.2001); *Association for Disabled Americans, Inc. v. City of Orlando*, 153 F.Supp.2d 1310, 1319 (M.D.Fla. 2001). Consequently, for these issues the relief the Consent Decree provides exceeds the possible recovery in a trial.

Additionally, Defendant has agreed to provide alternative services (where available) to disabled patrons who need additional assistance, and will implement special training of employees including agreed upon changes to company policies to ensure full and equal accessibility to disabled patrons. (App. Ex. "A" ¶ 16.4; DiLuigi Decl., App. Ex. "D" ¶ 27; Brennan Decl., App. Ex. "E" ¶ 19; Watson Decl., App. Ex. "F" ¶ 11). Defendant also has agreed to provide class counsel with inspection reports of all stations and to allow Plaintiffs to inspect stations for compliance with the Consent Decree, all at Defendant's expense. (App. Ex. "A" ¶ 15). Finally, Defendant has agreed to pay Plaintiffs' reasonable attorneys' fees and costs to ensure that the settlement is fully implemented. (App. Ex. "A" ¶ 19).

Plaintiffs clearly have obtained most of the relief they sought in the complaint, and in many respects, more than they could possibly obtain even if they were entirely successful at trial. The Consent Decree thus provides relief at or above the highest range of possible recovery. This factor weighs heavily in favor of the settlement's approval. *Bennett*, 737 F.2d at 986.

### d. Complexity, Expense, and Duration of Litigation

The next factor this Court must consider is the complexity and expense of litigating this matter. *See Bennett*, 737 F.2d at 986. The parties have spent a great deal of time and expense analyzing the legal and factual issues this case presents. As discussed above, absent settlement, this matter clearly will require a protracted and expensive trial and appeal, under circumstances where the ultimate results are highly uncertain. The parties, therefore, have good cause to settle this matter, another factor favoring this Court's approval of the settlement agreement.

### e. Substance and Amount of Opposition to Settlement

The next factor this Court must consider is the amount of opposition to the settlement. *Bennett*, 737 F.2d at 986. Despite posting notice in conspicuous locations at all of Defendant's stations, as well as in *The New York Times, USA Today, Miami Herald, Chicago Tribune,* and *Houston Chronicle,* and to disabilities rights organizations, no class member has objected to the settlement. The only objections came from Council and Agencies, non-class members. (DE 64, DE 72). The fact that no class member has objected, and there have been only two objections, despite a class of hundreds of thousands, strongly favors approval of the settlement. *Id.*

### f. The Stage of Proceedings at Which the Settlement Was Achieved

The Court also must consider the stage of the litigation in which the parties reached settlement. *Bennett*, 737 F.2d at 986. The complaint in this matter was filed on August 24, 1998, over three years ago. (DE 1). Since then, the parties and their experts have conducted extensive discovery and settlement negotiations, including numerous

---

8. Title III of the ADA's provisions are implemented by guidelines, known as ADAAG, which are promulgated by the Department of Justice. 42 U.S.C. § 12186(a) (2001); 28 C.F.R. Part 36 Appendix A (2001).

surveys, site visits and inspections of individual stations. (Moorehead Decl., App. Ex. "B" ¶ 6; Charouhis Decl., App. Ex. "C" ¶ 10; DiLuigi Decl., App. Ex. "D" ¶¶ 10–11; Brennan Decl., App. Ex. "E" ¶¶ 6–7; Watson Decl., App. Ex. "F" ¶¶ 9–21;). Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action. *Id.*

### g. The Judgment of Experienced Counsel for the Parties

The Court is entitled to rely upon the judgment of experienced counsel. *Cotton,* 559 F.2d at 1330. Plaintiffs are represented by counsel experienced in ADA litigation, including experience with lawsuits concerning access for persons with disabilities to gasoline stations and convenience stores. (Charouhis Decl., App. Ex. "C" ¶ 7). Likewise, counsel for BP have substantial experience in class litigation.[9] The parties' experts also are experienced and well thought of in this arena. (DiLuigi Decl., App. Ex. "D" ¶¶ 2–9; Brennan Decl., App. Ex. "E" ¶¶ 3–5). The judgment of these experienced counsel and experts that the Consent Decree is a fair, reasonable, and adequate resolution of this matter is another factor that favors approval of the Consent Decree. *Cotton,* 559 F.2d at 1330.

### h. The Settlement Is Not the Product of Collusion

Class counsel and counsel for Defendant have acted at arms-length in negotiating the settlement, and have vigorously represented their respective clients' interests. (Charouhis Decl., App. Ex. "C" ¶¶ 10–12; DeLuigi Decl., App. "D" ¶ 10; Brennan Decl., App. Ex. "E" ¶ 6). Moreover, the extraordinary relief Plaintiffs have obtained is itself evidence that the parties have negotiated in good faith at arms length. Clearly, the Consent Decree is not the result of fraud or collusion among the parties.

The Court finds that the Consent Decree is fair, adequate, reasonable, and not the subject of collusion. Accordingly, it should be approved.

### 4. The Consent Decree's Release of State Law Accessibility Claims Is Fair, Adequate, and Reasonable

■ The Consent Decree contains a release narrowly drawn to preclude class members from bringing certain accessibility claims against Defendant during the Consent Decree's term. (App. Ex. "A" ¶ 21). Objectors take issue with the release's preclusion of certain state law accessibility claims, insisting that this provision is unreasonable and overbroad. At the Fairness Hearing, Objectors also claimed that the release provisions did not say what the parties opined in their filing papers. To address this, the parties filed a further written stipulation expressing their intent that the release pertains only to statutory damages. While Objectors point is well-taken, this nature and extent of the release now has been sufficiently clarified by the written stipulation.

9. The Court takes judicial notice that Defendant's outside counsel, Mr. Perlman, regularly appears before it in ADA and class action matters. *See Access for the Disabled, Inc., et al. v. Steak & Ale Props.,* No. 01–6685–CIV–LENARD (S.D.Fla.); *Access for the Disabled, Inc., et al. v. Steak & Ale Props.,* No. 01–6556–CIV–GRAHAM (S.D.Fla.); *Access Now, Inc., et al. v. Kendall Summit Investors, L.C.,* No. 01–03637–CIV–HUCK (S.D.Fla.); *Access Now, Inc., et al. v. Metromedia Rest. Servs., Inc. d/b/a Bennigan's Irish American Grill & Tavern,* No. 01–0150–CIV–MOORE (S.D. Fla.); *Access Now, Inc., et al. v. Rare Hospitality Mgmt., Inc.,* No. 01–7619–CIV–ROETTGER (S.D.Fla.); *Access Now, Inc., et al. v. Steak & Ale of Florida, Inc.,* No. 01–0106–CIV–KING (S.D.Fla.); *Access Now, Inc., et al. v. T.G.I. Friday's, Inc.,* No. 01–6055–CIV–ROETTGER (S.D.Fla.); *Hernandez, et al. v. Rare Hospitality Mgmt., Inc.,* No. 01–2516– CIV–GRAHAM (S.D.Fla.); *Zamora et al., and all those similarly situated v. Credit Suisse First Boston Corp.,* No. 01–3645–CIV–MOORE (S.D.Fla.); *Access for the Disabled, Inc., et al. v. Minto Builders (Florida), Inc.,* No. 00–8551–CIV–ZLOCH (S.D.Fla.); *Advocates for the Disabled, Inc., et al. v. Burger King Corp.,* No. 00–3976 CIV–King (S.D.Fla.); *Disability Advocacy & Access Network, Inc., et al. v. Burger King Corp.,* No. 00–7736 CIV–Zloch (S.D.Fla.); *Hawkins v. Rare Hospitality Int'l, Inc.,* No. 00–0651–CIV–UNGARO–BENAGES (S.D.Fla.); *King, et al., and all those similarly situated v. Salomon Smith Barney, Inc.,* No. 99–2063–CIV–UNGARO–BENAGES (S.D.Fla.); *Alliance for ADA Compliance, Inc., et al. v. Steak & Ale of Fla., Inc., d/b/a Bennigan's Grill and Tavern Rest.,* No. 98–7370–CIV–DAVIS (S.D.Fla.).

Still, Objectors raise issue even to this aspect of the release. According to Objectors, after receiving the benefits of $45 million in enhancements designed to guarantee full accessibility in settlement of a contested matter, class members should retain the right to sue Defendant all over again for the exact same accessibility issues under their respective state's accessibility laws. This would clearly result in multiple inconsistent adjudications not only for different stations, but even for any particular station. More importantly, Objectors' position is contrary to law.

First, federal class action settlements containing a release of state law claims are both common and presumptively valid.[10] *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 376–77, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir.1981). *See Access Now, Inc. v. AHM CGH, Inc.*, No. 98–3004–CIV–GOLD–SIMONTON, 2001 WL 1005593, 2001 U.S. Dist. LEXIS 12876 (S.D.Fla. May 11, 2001)(approving ADA class action consent decree releasing state accessibility claims); *see also, Class of Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir.1992)(federal court class action settlement may release state law claims); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982)(approving 23(b)(2) class action settlement's release of state law claims); *Nottingham Partners v. Trans–Lux Corp.*, 925 F.2d 29, 33–34 (1st Cir.1991)(dismissing action based on release of federal claims in state court class action settlement under state's Rule 23(b)(2) analog); *Sandler Assocs., L.P. v. BellSouth Corp.*, 818 F.Supp. 695, 699–700 (D.Del. 1993)(same); *In re Mexico Money Transfer Litigation*, 267 F.3d 743, 747 (7th Cir. 2001)(class action settlement's release of state law claims affirmed).

Such releases typically are broad in scope. *See Matsushita*, 516 U.S. at 376–77, 116 S.Ct. 873 ("a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action"); *Oswald v. McGarr*, 620 F.2d 1190, 1198 (7th Cir.1980) (settlement may include release of claims not before the court); *Corrugated Container*, 643 F.2d at 221 (federal court "may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint"); *TBK Partners*, 675 F.2d at 461 (settlement may even release claims not presentable in the class action).

As the Supreme Court explained in *Matsushita*:

> In order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.

*Matsushita*, 516 U.S. at 376–77, 116 S.Ct. 873.

*AHM* is also a case on point. *AMH*, 2001 WL 1005593, 2001 U.S. Dist. LEXIS 12876. There, a disability rights group, Access Now, on behalf of all disabled persons as defined by the ADA, sued Tenet Healthcare in this Court claiming that its facilities throughout the U.S. violated the ADA. *Id.* at *1, 2001 U.S.Dist. LEXIS 12876 at *2–3. Following the grant of class certification pursuant to Fed.R.Civ.P. 23(b)(2), the parties entered

---

**10.** Moreover, federal class action settlements routinely include releases waiving future claims. *See, e.g., McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1254 (11th Cir.2001) (approving release of future claims in tobacco litigation); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir.1982)(a release of future claims is an important element of antitrust class settlements); *see also Williams v. General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir.1998) ("It is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other."); *In re Orthopedic Bone Screw Prods. Liability Litig.*, 176 F.R.D. 158, 170–71 (E.D.Pa.1997)(certifying class including "[a]ll persons and entities wherever located, who have or may in the future have any claim" against defendants).

into a consent decree. *Id.* at *2, 2001 U.S.Dist. LEXIS 12876 at *7. As in this case, the parties' consent decree set forth a comprehensive nationwide program of facility review and modification that would eventually ensure full accessibility at defendant's facilities. *Id.* at *3, 2001 U.S.Dist. LEXIS 12876 at *11. The consent decree also contained a release discharging defendant from federal and state accessibility claims. *Id.* at *20, 2001 U.S.Dist. LEXIS 12876 at *57–58.

Despite the release, this Court found that all requisites to class certification under Rules 23(a) and 23(b)(2) had been satisfied, and that the Consent Decree was fair, adequate, and reasonable. *Id.* at *2–11, 2001 U.S.Dist. LEXIS 12876 at *9–29. Accordingly, this Court approved the Consent Decree. *Id.*

Objectors in response summarily claim that the Release here affects claims not based on the same factual predicate and that it is unreasonable because it "obliterates" an "enormous" amount of state law damage claims. Both statements are false. First, because the Release only covers claims "concerning access for persons with . . . Disabilities," it is clearly limited to claims based on the same factual predicate. (App. Ex. "A" ¶ 21.2).

Second, as the decisions cited make plain, it is permissible for class settlement releases to bar all related damage claims. Nonetheless, the Release here does not have such wide ranging effect, because it does not bar claims for actual damages at all.[11] Rather, the Release is strictly limited to federal and state accessibility law claims for injunctive relief and statutory damages. (*See* Joint Response to Objections at p. 28). (App. Ex. "A" ¶ 21.2). By statutory damages, the parties

mean only to bar class members from claiming minimum or liquidated damages under statutes that require no proof for recovery.[12] (*Id.*). In short, to the extent some states have accessibility laws authorizing private suits for actual damages, the Release does not bar these claims.

Additionally, the Release will not affect other avenues class members have to seek damages. For example, Title III of the ADA permits the Attorney General to bring enforcement actions to compel compliance with the ADA, and to obtain monetary damages for persons who have been aggrieved. 42 U.S.C. § 12188(b)(2)(B)(2001). The Attorney General is not a class member, and its rights are not affected by the Consent Decree. *See, e.g., In re Birmingham Reverse Discrimination Employment Litig.*, 833 F.2d 1492, 1498–99 (11th Cir.1987), *cert. granted sub nom., Martin v. Wilks*, 487 U.S. 1204, 108 S.Ct. 2843, 101 L.Ed.2d 881 (1988)(nonparties to consent decree not collaterally estopped); *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975) (EEOC not privy to private suit and not barred by collateral estoppel or res judicata); *EEOC v. Jacksonville Shipyards, Inc.*, 696 F.Supp. 1438, 1441–42 (M.D.Fla.1988) (same).[13]

Similarly, in many of those states that allow compensatory damages, the state attorney general or similar authority also can pursue damages on an individual's behalf. *See, e.g.,* Fla. Stat. § 760.51 (2001); 5 Ill. Comp. Stat. Ann. § 8A–104 (2001); Minn. Stat. § 363.14(a) (2000); Mo.Rev.Stat. § 213.075 (2000); 43 Pa. Stat. Ann. § 959(f)(1) (2001); Alaska Stat. § 18.80.100 (2001); La.Rev.Stat. Ann. §§ 51:2261(c)(8), 51:2235(9) (2001); R.I. Gen. Laws § 42–87–5(a) (2001); Vt. Stat. Ann. tit. 9, § 4506

---

**11.** The parties' statement on the record is binding. *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir.1991)(courts look to consent decree and record to determine consent decree's preclusive effect); *Coates v. Kelley*, 957 F.Supp. 1080, 1084–85 (E.D.Ark. 1997)(same).

**12.** The parties have uncovered only two states with covered stations that allow such statutory damages. (*See* ORS § 659.121(2)(Oregon allows for the recovery of compensatory damages or $200, whichever is greater)); Colo.Rev.Stat.

§ 24–34–602 (Colorado allows for a minimum recovery of $50 in damages).

**13.** For this same reason, Agencies' contention that the Consent Decree may affect state attorney generals' rights to enforce their own laws is incorrect. To the contrary, any government authority remains free to bring an enforcement action as well as to withhold building or occupancy permits should the enhancements to existing or newly constructed facilities fail to meet state or local regulations and requirements.

(2001). Because no state is a class member, damage claims brought by such authorities are not precluded.

Finally, it bears mentioning that the Release does not preclude personal injury damage claims. For example, if a court were to determine that Defendant's negligence proximately caused a disabled patron to suffer personal injuries relating to a ramp at a covered gasoline station, actual damages would still lie. That person merely would be precluded from claiming statutory damages for an accessibility law violation.

If Objectors were correct, Defendant would have no reason to settle. Rather, Defendant would be far better off reacting to accessibility complaints on a station-by-station basis. This result, however, would be contrary to the purpose of Rule 23(b)(2), which is to *finally* resolve class disputes.[14] *See United States v. Allegheny–Ludlum Indus., Inc.,* 517 F.2d 826, 878 (5th Cir.1975) ("The (b)(2) class is by definition a cohesive aggregate, and hence its members are said to be bound by a 'superior' res judicata effect."); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 252–53 (3d Cir.1975)(stating that allowing a(b)(2) class to be certified and opt out of a potential judgment would "permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication.").

The parties' Consent Decree resolves all accessibility issues, and it does so under terms that render all of Defendant's gasoline stations fully accessible to the disabled. The Court finds that the narrow release negotiated by the parties is fair, adequate, and reasonable.

## C. OBJECTORS ARE PRECLUDED FROM OBJECTING TO THE *PROPOSED CONSENT DECREE*

In addition to finding that the objections are without merit, this Court finds that the Objectors are precluded from objecting for the following reasons.

### 1. Objectors Lack Standing Under Fed.R.Civ.P. 23

 The two objector groups who belatedly have come forward are *not* members of the Plaintiff class,[15] but claim merely to provide "representation" to such persons. (Agencies Mem. DE 65 at III(A); Council Mem. DE 72 at II; App. Exs. "N" & "O"). Neither group, however, has brought objections on behalf of any particular class member, and their offer to do so at the Fairness Hearing, is untimely. No class member has appeared to object. Under Fed.R.Civ.P. 23(e), non-class members are not permitted to assert objections to a class action settlement. *Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir.1989); *see Raines v. State of Florida,* 987 F.Supp. 1416, 1418 (N.D.Fla.1997)(holding in ADA class action that "only parties to the settlement of a class

---

**14.** For similar reasons, Objectors' contention that Plaintiff class members should be allowed to opt out must be rejected. Due to the extremely cohesive nature of this case, *every* class member will necessarily benefit from the enhancements to gasoline stations provided by the Consent Decree. Because class members cannot avoid the benefits provided by the Consent Decree, to permit an exclusion opportunity would be to allow class members to have their cake, and eat it too. Congress expressly recognized the inequity of this result and, for that reason, did not provide for opt outs in class actions seeking predominantly injunctive relief. *See Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 507 (5th Cir. 1981) ("allowing objectors to opt out [of a 23(b)(2) class] would discourage settlements because class action defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger

claims opting out to pursue their individual claims separately."). Clearly, the Consent Decree's non-inclusion of a right to opt out was fair and reasonable.

**15.** Class members are defined as:

all persons who have or claim they have, or will have or will claim they have, been denied full and equal access to or been discriminated against under Title III of the ADA or regulations promulgated thereunder, or under similar federal, state, or local law, rule, order, or ordinance at or in connection with one or more BP Amoco Stations and Convenience Stores in the Geographic Area, because they are persons with Mobility Disabilities, dexterity, vision, or hearing disabilities who could otherwise assert such a claim against BP AMOCO.

(App. Ex. "A" ¶ 2.30).

action (plaintiffs, class members, and the settling defendants) have standing to object to the fairness of the settlement.") As the *Gould* court explained, allowing non-class members to object would frustrate the "unassailable premise that settlements are to be encouraged":

> The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals. Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objections at the settlement stage would tend to frustrate this goal … We hold, therefore, that non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement.

*Gould,* 883 F.2d at 284; *see also San Francisco NAACP v. San Francisco Unified Sch. Dist.,* 59 F.Supp.2d 1021, 1032 (N.D.Cal.1999) ("nonclass members have no standing to object to the settlement of a class action"); *Kusner v. First Penn. Corp.,* 74 F.R.D. 606, 610 n. 3 (E.D.Pa.1977) (refusing to allow non-class member to intervene for purposes of objecting to settlement), *aff'd,* 577 F.2d 726 (3d Cir.1978); *Horton v. Metropolitan Life Ins. Co.,* No. 93–1849–CIV–T–23A, 1994 U.S. Dist. LEXIS 21395 at *34 (M.D.Fla.1994). Because neither objecting organization is a member of the class or has asserted objections on behalf of a specific class member, each lacks standing to challenge the settlement.

### 2. Objectors Lack Standing Under Article III of The Constitution

 The Objector organizations also lack standing to appear in this case under Article III of the Constitution. The concept of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Supreme Court has held that to have standing under Article III, a plaintiff must show that: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not merely conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to being merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. 2130. An association purporting to represent its members must further show that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation by individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Doe v. Stincer,* 175 F.3d 879 (11th Cir.1999). Where there is no specific injured plaintiff on whose behalf an organization brings a claim, an organization's claim can succeed only if it alleges a direct "injury-in-fact" to itself that satisfies Article III's requirements. *Tennessee Protection & Advocacy, Inc. v. Board of Ed. of Putnam County,* 24 F.Supp.2d at 816 (M.D.Tenn.1998).

Objectors' claimed mandate to represent disabled persons does not obviate the need to satisfy Article III's standing requirements. Rather, like any plaintiff, Objectors must still possess a "specific and concrete factual allegation of injury." *Tennessee Protection & Advocacy,* 24 F.Supp.2d at 816 (advocacy group failed to establish Article III standing because it neither alleged injury to specific individuals nor injury to itself as a group); *see also Doe v. Stincer,* 175 F.3d at 887–88 (advocacy center failed to establish standing to sue on behalf of itself or its constituents); *Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees,* 19 F.3d 241 (5th Cir.1994)(same).

Council and Agencies do not meet these requirements. First, neither organization has even attempted to show that any particular class member has been or is likely to be subjected to discrimination at a BP gasoline station in violation of the ADA,[16] as required

---

**16.** Title III of the ADA limits standing to "any person who is being subjected to discrimination

to show injury-in-fact. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Likewise, Objectors have made no showing (or even allegation) that any BP gasoline stations in their jurisdiction are inaccessible, much less that discrimination is imminent for a specific disabled person whom they represent, as Article III requires. *Id.* Indeed, four of the Agency objectors,[17] including the lead objector, New Hampshire, do not possess a single BP station in their state.[18] And the South Carolina and Kentucky agency objectors' states have only one and eight stations, respectively. (*Id.*). Moreover, even with regard to the other agencies that have signed on to New Hampshire's objections, none alleges that a member has ever been subjected to discrimination at a BP gasoline station.

Absent any claims on behalf of specific, injured members, Objectors only have standing if they show direct "injury-in-fact" to the organizations themselves. *Tennessee Protection & Advocacy*, 24 F.Supp.2d at 816. Neither Council nor Agencies has made such a showing. As a matter of law, Objectors' failure to show a concrete, particular injury-in-fact that is actual or imminent and not merely conjectural requires that their objections be overruled for lack of standing. *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. For instance, issues raised pertaining to talking ATM's are not even required by the A.D.A. accessibility guidelines.

### 3. The Objections Are Time–Barred

■ Objectors also are barred from being heard due to their violation of the Court's objection filing deadline. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 252 (3d Cir.2001)(objectors waived untimely objections that Plaintiff class did not satisfy Rule 23(a)'s requirements); *Joel A. v. Giuliani*, 218 F.3d 132, 140 (2d Cir.2000)(same); *Cook v. McCarron*, Nos. 92 C 7042 & 95 C 0828, 1997 WL 47448 at *17, 1997 U.S. Dist. LEX-

IS 1090 at *53 (N.D.Ill. Jan. 22, 1997)(motion to file untimely objections denied); *In re Centocor, Inc. Secs. Litig.*, No. 92–CV–1071, 1993 WL 189937 at *3, 1993 U.S. Dist. LEXIS 7229 at *10 n. 5 (E.D. Pa. June 2, 1993)(court refused to consider late objections); *Roberts v. Heim*, Nos. 84–8069 TEH, C 87–6174 TEH, & C 88–3373 TEH, 1991 WL 427888 at *1, 1991 U.S. Dist. LEXIS 18208 at *3 (N.D.Cal. Aug. 28, 1991)(no legitimate excuse for filing objections two weeks late); *see also Haynes v. Shoney's, Inc.*, No. 89–30093–RV, 1993 WL 19915 at *2, 1993 U.S. Dist. LEXIS 749 at *6 (N.D.Fla. Jan. 25, 1993)(filing objections two days after deadline "would be reason enough to reject . . . objection").

As discussed above, despite actually receiving the June 2001 Notice, Objectors took no action prior to this Court's deadline. Rather, Objectors withheld their objections yet an additional 3 ½ months beyond that deadline, until the eve of the fairness hearing. Regardless of the excuses offered, the objections are untimely and will disrupt the fair and adequate settlement, to the parties' substantial prejudice.

Objectors' motions for leave to file their late objections confirm the absence of excuse for their violating the Court's deadline by over 100 days. For example, Council concedes it is on the Consent Decree's Notice list, and admits that its Director of Advocacy and Government Affairs may have ignored the Notice because that person "is blind and cannot read standard print." (DE 73 at 2). The failure of an organization to have in place as the person responsible for reading such notices, someone capable of reading the mail, cannot serve to invalidate the Court's approved notice or the Court's order regarding timely objections.

Agencies also lack any legitimate excuse for their violation of the filing deadline. De-

---

on the basis of disability . . . or who has reasonable grounds for believing such person is about to be subjected to discrimination in violation of . . . this title." 42 U.S.C. § 12188(a)(1) (2001).

**17.** New Hampshire, Connecticut, Rhode Island and Texas. (App. Ex. "A" at Exs. "1" & "2"). Of the 2,800 BP gasoline stations and convenience stores covered by the Consent Decree,

457, only 16%, are located within *any* objector agencies' state. (*Id.*).

**18.** Moreover, Article III clearly does not permit these objectors to leap past this problem by speculating, as they do, that Defendant may some day acquire stations in their state, which may some day result in discrimination to someone they are permitted to represent. (*See* DE 65 at 3).

spite its self-described status as advocate for the disabled and the extensive notice provided, including to its national association, these twelve state agencies claim no one learned of the settlement until November 2001. (DE 66 at ¶ 2). This representation is belied by the fact that Plaintiffs' counsel, Mr. Charouhis, received a telephone call from the office of Agencies' Florida counsel in July 2001, shortly after the Notices were sent and posted, for the purpose of discussing the Consent Decree. (Charouhis Decl., App. Ex. "C" ¶ 15). Mr. Charouhis was not asked for a copy of the Consent Decree, which he would have been glad to provide, most likely because Agencies already had the copy of the Consent Decree Mr. Charouhis had provided to their National Association, at their request. (Id. ¶ 18). Agencies' misrepresentation that it only learned of the settlement in November alone requires denial of their objections.

Moreover, even if true, Agencies' position provides no legitimate reason for waiting until January to object. Indeed, though Agencies claim they then "worked diligently on obtaining copies of the proposed Consent Decree and other related documents" (DE 66 ¶ 4), they cannot adequately explain why someone did not simply telephone Mr. Charouhis again for a copy (as described in the Notice) or obtain a copy of the Consent Decree directly from the Clerk of the Court. Agencies also fail to explain why they did not *at that time* seek additional time to file. Instead, knowing the deadline to file had long passed, Agencies waited yet another 45 days to file their objections, in direct violation of this Court's order. In sum, Objectors' late filings in this matter are untimely and no justifiable reason has been offered for their late acceptance.

Objectors' conclusory statements that they do not believe the parties will be prejudiced is also illfounded. To the contrary, the Court concludes that the parties will suffer substantial prejudice if the objections are allowed at this late date. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir.2001)(potential derailment of settlement the existing parties had negotiated for months constituted substantial prejudice justifying denial of objector/intervenor's untime-

ly request to intervene). As discussed *supra*, in reliance upon the Court's preliminary approval of the Consent Decree and the absence of any objections, Defendant began implementing of the Consent Decree at great expense. ( Watson Decl., App. Ex. "F" ¶¶ 22–25). These efforts were required due to the time constraints imposed by the Consent Decree for this massive undertaking. (*Id.* ¶ 22).

Plainly, the parties will suffer significant prejudice, and a tremendous amount of the parties' and this Court's time and effort will have been wasted, should Objectors' late objections be considered. Given that the objections are extraordinarily untimely, that no valid excuse has been shown, and that substantial prejudice to the parties would result, they are denied.

### III. *CONCLUSION*

The Court finds that the Plaintiff class meets the requirements for certification pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Court further finds that the proposed settlement is fundamentally fair, adequate, and reasonable, and not the product of collusion between the parties, and satisfies all of the factors set forth by the Eleventh Circuit in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984).

Accordingly, for all of the foregoing reasons, the Court **CERTIFIES** the class under Rule 23(b)(2), **OVERRULES** the objections of Agencies and Council, and **APPROVES** the Consent Decree.

The Court retains jurisdiction for enforcement purposes as well as for fees and costs.

This case is now **CLOSED.**

### *ORDER DENYING MOTION FOR AMENDED FINDINGS AND RULINGS*

**THIS CAUSE** is before the Court upon the State Protection and Advocacy Agencies' (Advocacy, Inc.(Texas), Arizona Center for Disability Law, Florida Advocacy Center for Persons with Disabilities *et al.*) Motion for Amended Findings and Rulings [D.E. 96], filed on March 6, 2002. The Plaintiffs and

Defendants filed a Joint Opposition [D.E. 100] to the Protection and Advocacy Agencies' Motion for Amended Findings and Rulings on March 21, 2002. The Protection and Advocacy Agencies did not file a Reply in response to the Joint Opposition submitted by the Plaintiffs and Defendants. Upon a review of the parties' arguments and relevant case law, this Court concludes that the Agencies' Motion to Amend should be denied.

## I. BACKGROUND

On February 15, 2002, a Fairness Hearing was held regarding the proposed Consent Decree in the above-captioned matter. Thereafter, on February 19, 2002, after hearing all arguments regarding the proposed settlement, the Court certified a settlement class and approved the consent decree [D.E. 90]. In pertinent part, the Court held in its February 19, 2002 Order that the Protection and Advocacy Agencies' objections were time-barred due to their violations of the Court's objection filing deadline. *See* Order [D.E. 90], p. 34. The Court explained: "[D]espite actually receiving the June 2001 Notice, Objectors took no action prior to this Court's deadline. Rather, Objectors withheld their objections yet an additional 3 ½ months beyond that deadline, until the eve of the fairness hearing ... [Accordingly,] the objections are untimely and will disrupt the fair and adequate settlement, to the parties' substantial prejudice." *Id.* at 34–35. More specifically, upon review of the evidence, the Court found that the Agencies misrepresented to the Court that they only learned of the settlement in November since they, in fact, received information regarding the Consent Decree/Settlement by, at least, July 2001. *Id.* at 35. The Court found that the Agencies' misrepresentation alone could be sufficient for a denial of their objections. *Id.*[1]

## II. LEGAL STANDARD

In their Motion to Amend Findings and Rulings, the Agencies fail to provide any case law or rule of procedure under which they proceed to seek their requested relief. Upon review of their motion, the Court concludes

the Agencies seek relief pursuant to Rule 59(e) of the Federal Rules of Civil Procedure which provides that a party may "alter or amend a judgment" upon the timely filing of a motion. Fed.R.Civ.P. 59(e).

The purpose of a motion for reconsideration or amendment is "to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992). In particular, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.,* 62 F.Supp.2d 1316, 1331(M.D.Fla.1999); *See also Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla. 1994). In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Sussman,* 153 F.R.D. at 694. A "motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine Inc.,* 808 F.Supp. at 1563. Instead, a motion for reconsideration is appropriate where the "Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension .... Such problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.,* 808 F.Supp. at 1563 (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983); *Moog, Inc. v. United States,* No. 90–215E, 1991 WL 255371, at *1, 1991 U.S. Dist. Lexis 17348, at *2 (W.D.N.Y. Nov.21, 1991)).

## III. DISCUSSION

In their instant motion, the Protection and Advocacy Agencies request the Court to amend its findings that the agencies misrepresented they learned of the Settlement in

---

1. The Court, however, provides several bases for denial of the objections as set forth in its prior

Order and discussed herein. *See* Order [90], pp. 34–36.

November 2001 and that such misrepresentation supplies grounds upon which to deny the Agencies' Motion to Late File Objections to Class Certification and Consent Decree. The Protection and Advocacy Agencies, however, fail to cite any case law or persuasive evidence for such an amendment to the Court's Order. Moreover, the Agencies do not dispute the substantive findings and ruling set forth in the Court's February 19, 2002 Order. Rather, the agencies simply assert that, while its Fort Lauderdale Office may have been contacted by a party attorney, the lead attorney for the Agencies, attorney Lospennato, did not personally receive notice until early November. The asserted fact that Attorney Lospennato received notice later than other agency offices does not provide new evidence mandating a change in the Court's prior ruling.

Furthermore, even assuming the Agencies' did not receive notice until November, this does not change the findings in the February 19, 2002 Order that the agencies failed to set forth a legitimate reason for waiting until January to object. The Court held: "Indeed, though Agencies claim that they then 'worked diligently on obtaining copies of the proposed Consent Decree and other related documents' (DE 66 ¶ 4), they cannot adequately explain why .... they did not *at that time* seek additional time to file. Instead, knowing the deadline to file had long passed, Agencies waited yet another 45 days to file their objections, in direct violation of this Court's order. In sum, Objectors' late filings in this matter are untimely and no justifiable reason has been offered for their late acceptance." Order [D.E 90], p. 35–36. Accordingly, since the Agencies have not presented any new evidence, intervening change in the law, and/or need to clarify a manifest injustice, the Court finds there is no reason to amend or alter its prior Order Certifying Settlement Class and Approving Consent Decree [D.E. 90]. Accordingly, it is

**ORDERED AND ADJUDGED** that the Protection and Advocacy Agencies' Motion for Amended Findings and Rulings [D.E. 96] is DENIED.