**CAMPERO USA CORP., Plaintiff,**

v.

**ADS FOODSERVICE, LLC,
et al., Defendants.**

Case No. 12–20571–CIV.

United States District Court,
S.D. Florida.

Dec. 13, 2012.

Brett M. Halsey, James Alexander Stepan, Michael D. Joblove, Jonathan Perlman, Genovese, Joblove & Battista, P.A., Miami, FL, for Plaintiff.

Himanshu M. Patel, Roberto Zarco, Kaari–Lynn Sea Gagnon, Zarco, Einhorn, Salkowski & Brito, P.A., Jason Monroe Murray, Murray Law, P.A., Miami, FL, Amy J. Pierce, Joseph M. Hampton, Corbyn Hampton, Oklahoma City, OK, for Defendants.

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

CHRIS McALILEY, United States Magistrate Judge.

On November 7, 2012, I held a hearing on a motion to compel filed by Defendants ADS Foodservice LLC and its principal Aaron Spencer (collectively "Defendants"), and thereafter entered an Order that granted in part ADS's motion. [DE 100]. At the hearing, and later in the Order, I found that Plaintiff had failed to meet its obligation to establish that 19 emails, that are responsive to some of ADS's discovery requests, are protected from disclosure by the attorney-client and/or the work product privileges. Accordingly, I ordered Plaintiff to produce those documents to Defendants. [*Id.* at ¶¶ 1(a) and (f) ].

Plaintiff now asks that I reconsider and vacate that Order, and find that the documents in question are protected by privilege and therefore from discovery by Defendants. [*See* DE 103, *Plaintiff's Motion for Reconsideration of Portions of the No-*

*vember 18, 2012* [sic] *Order Requiring Disclosure of Privileged Communications and/or for In Camera Inspection* ]. The motion is fully briefed. [DE 107, 112]. For the following reasons, the motion is denied.

### 1. Background

#### a. The Complaint

Plaintiff Campero USA Corp. ("Campero"), the franchisor for Polio Campero restaurants, entered into a franchise agreement with Defendants, pursuant to which Defendants operated a Polio Campero restaurant. Defendants allegedly closed that restaurant in violation of the parties' agreement and opened, in the same location, a competing restaurant. Plaintiff now sues Defendants for breach of the franchise agreement, and for infringing Plaintiff's trademarks, in violation of the Lanham Act; it additionally asserts claims against the Defendants for common law trademark infringement and unfair competition, and sues Spencer for breach of a personal guaranty. Plaintiff sues another defendant, Sonic (the franchisor for the allegedly competing restaurant), for tortious interference with the contractual relationship between Plaintiff and Defendants. As for jurisdiction, Plaintiff asserts federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(b), supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and diversity jurisdiction, pursuant to 28 U.S.C. § 1332. [*See* DE 50, *Second Amended Complaint* ].

#### b. Defendants' motion to compel

On September 20, 2012, Defendants filed their Amended Motion to Compel Documents from Plaintiff. [DE 79]. In that motion, Defendants challenged various objections Plaintiff made to Defendants' document requests, including Plaintiff's objection that some of the responsive documents were protected from disclosure by the attorney-client privilege and work product doctrine. In their motion, Defendants noted that Plaintiff had not provided Defendants with a privilege log, as required by S.D. Fla. Local Rule 26.1(g)(3)(C).

#### c. Plaintiff's response, and my two orders directing Plaintiff to meet its burden of proof to establish its privilege claims

On September 25, 2012, I issued an Order that directed the parties to meet and confer about the motion, and directed Plaintiff, thereafter, to file a response to the motion. [DE 80]. Noting that it appeared that Plaintiff would be asserting claims of privilege, I wrote this in my Order:

> This Court notes that Plaintiff has raised the issues of attorney-client and work product privilege in response to many of Defendants' document requests and that Defendants indicate Plaintiff has not produced a privilege log. Counsel is reminded that the party raising privilege has the burden of proving its applicability. *See Bridgewater v. Carnival Corp.,* [286 F.R.D. 636] No. 10–CV–22241, 2011 WL 4383312 (S.D.Fla. Sept. 20, 2011). Plaintiff shall produce to Defendants its privilege log one business day in advance of the meet and confer. Counsel are ordered to fully discuss the scope of Defendants' document requests, Plaintiff's objections to those requests including its claims of privilege, and the content of Plaintiff's privilege log. Plaintiff should attempt to satisfy Defendants' questions about the claims of privilege, including providing additional information, which may include declarations and legal authority, to support and justify those claims.

[*Id.,* p. 2, ¶ 1] (footnote and emphasis in original omitted). At the end of that Order, where I directed Plaintiff to file a response to the motion, I added the follow-

ing: "I expect that Plaintiff in its response will fully meet its burden to support its claims of privilege. *See Bridgewater, supra.*" [DE 80, p. 3, ¶ 2] (hereafter, "September 25th Order").[1]

The *Bridgewater* decision that I cited in my Order, is an opinion I wrote. In that opinion I surveyed, in considerable detail, the law that governs the burden of proof that a party must meet when it asserts a claim of privilege. Specifically, I wrote the following:

> The party claiming a privilege has the burden of proving its applicability. *Adelman v. BSA,* 276 F.R.D. 681, 689–90 (S.D.Fla.2011). Federal courts have consistently recognized the well settled proposition that **the party seeking the privilege has the burden of establishing all of its essential elements.** *In re Air Crash Near Cali, Colombia,* 959 F.Supp. 1529, 1532 (S.D.Fla.1997) (quoting *In re Air Crash Disaster at Sioux City, Iowa,* 133 F.R.D. 515, 518 (N.D.Ill. 1990)). *See also, United States v. Construction Prods., Research, Inc.,* 73 F.3d 464, 473–74 (2nd Cir.1996) (rejecting attorney-client and work product claims where the party claiming those privileges failed to establish the essential elements); *In re Grand Jury Subpoenas,* 318 F.3d 379, 384 (2nd Cir.2003) (collecting cases).
>
> **"A failure of proof as to any element causes the claim of privilege to fail."** *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.,* 110 F.R.D. 511, 515 (M.D.N.C.1986). **"That burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions,** for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be ex-

posed." *In re Bonanno,* 344 F.2d 830, 833 (2nd Cir.1965). **The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit.** *United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir.1977). **"Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. An improperly asserted claim of privilege is no claim of privilege at all."** *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 94 (D.Del.1974). **"[S]ubmitting a batch of documents to the Court *in camera* [does not] provide an adequate or suitable substitute because the Court is often without information of what the document concerns or how it came into being or other relevant information which would enable it to determine whether the documents are privileged."** *Id.*

> **This burden, to sustain a claim of privilege, is heavy** because privileges are "not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *see also United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (privileges contravene the fundamental principle that "the public ... has a right to every man's evidence"). They must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."

---

1. I further noted that it would not be possible for Plaintiff to fully support its claims of privilege within the page limits set forth in my standard discovery procedures [*see,* DE 32, p. 8], accordingly, I placed no page limitation on Plaintiff's response. [DE 80, p. 3, ¶ 2].

*Bridgewater,* 286 F.R.D. at 638–39 (emphasis added). By referring Plaintiff to the *Bridgewater* opinion, and ordering that Plaintiff, in its response to the motion to compel, fully meet its burden to support its claims of privilege, I went out of my way to remind Plaintiff that it would not be enough for Plaintiff to simply *claim* privilege, but that it would have to *prove* that each email met all the elements of each privilege claimed.[2]

On October 5, 2012, Plaintiff filed its response to the motion to compel, that reported that the parties had narrowed their dispute, and argued that the requested documents still in dispute were irrelevant, and therefore should not be produced. [DE 82]. Surprisingly, no privilege log was attached to the response, and Plaintiff wrote only this about its privilege claims: "[A] party does not have to provide a privilege log for discovery requests that are unduly intrusive and patently overbroad, such as the above Requests." (citations omitted). [DE 82, p. 5].

On October 10, 2012, I held a telephonic status conference, at which I resolved, in large part, the dispute about the relevance of the document requests and directed the parties to again meet and confer, to further narrow and clarify the dispute. I also asked about counsels' conferral about the privilege claims. Defendants reported that they had received a revised privilege log from Plaintiff, but that Plaintiff had not satisfied them that their privilege claims were well taken. Plaintiff responded that it did not know what specific questions Defendants had about their claims of privilege. I directed counsel to sit down and discuss the matter. To facilitate their discussions, I clarified that any information Plaintiff might share with Defendants, as part of its effort to establish each privilege claim, would not be construed as a waiver of those privileges.[3] I emphasized that counsel must work through each claim of privilege for each document, and to not expect that I would resolve the matter with an *in camera* review of the documents.[4] I then issued an

---

2. The words of Horton the Elephant come to mind: "I meant what I said, and I said what I meant. An elephant's faithful one-hundred percent!" Dr. Seuss, *Horton Hatches the Egg.*

3. There are times when it can be useful to allow opposing counsel, as part of a conferral process, to see all or part of a privileged communication. For example, the contents of a particular privileged document may not be remarkable or sensitive, yet disclosure of the document would cause a waiver of the privilege for other communications that concern the same subject matter, and those other communications may be highly sensitive. By assuring that selected disclosure as part of the conferral process would not cause a waiver of Plaintiff's privilege claims, I gave Plaintiff the option—at its election—to share some of the disputed emails with opposing counsel.

4. As I told counsel, Courts make a principled attempt to try to avoid *ex parte* proceedings, including *in camera* review of documents, as

it is fundamentally contrary to our adversarial system of dispute resolution. *In camera* review puts the Court in the undesirable position of attempting to think of arguments that the excluded counsel might make if he or she had access to the documents in question, and the Court can never do the job of counsel, as well as counsel can. Thus, it is wise for the Court to not consider an *in camera* review until the party asserting privilege has done all that it reasonably could to establish privilege. *In camera* review "is not to be used as a substitute for a party's obligation to justify its withholding of documents. Such a procedure is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible." *CSX Transp., Inc. v. Admiral Ins. Co.,* No. 93–132–CIV–J–10, 1995 WL 855421, *5 (M.D.Fla. July 20, 1995) (citations and quotation marks omitted).

Order that again addressed the Plaintiff's obligation to establish its claims of privilege:

> [T]he parties shall resume their conferral on Defendants' motion to compel, in an effort to further narrow that dispute. This shall include continued discussion about the merits of Plaintiff's claims of privilege. Plaintiff should attempt to satisfy Defendants' questions about those claims in the manner outlined in this Court's September 25th Order [DE 80]. The Court encourages Plaintiff to provide information (which may even include privileged documents themselves) to Defendants, to satisfy any reasonable questions Defendants raises about Plaintiff's privilege claims. **To that end, I expressly ORDER that, any such information that Plaintiff produces to Defendants' counsel for the purpose of establishing Plaintiff's claims of privilege, that Plaintiff maintains is privileged, will not cause a waiver of Plaintiff's privilege claims.**

[DE 88, pp. 2–3] (emphasis in original). I further ordered that after the parties conferred, that Defendants file a reply that, among other things, attached a copy of Plaintiff's most recent privilege log. [*Id.*, p. 3].

### d. The reply, surreply and response to surreply!

Defendants filed a reply memorandum that, in pertinent part, contended that Plaintiff had not met its burden to prove its claims of privilege it had asserted in objection to document requests nos. 2, 5, 9, 10, 11, 29 and 30. ("[Plaintiff] has, quite frankly, refused to satisfy its burden in the manner outlined by this Court other than

providing its Second Amended Privilege Log,"). [DE 91, p. 2]. Defendants further wrote that the privilege log did not provide enough information for Defendants to evaluate Plaintiff's claims of privilege. Defendants asked the Court to either overrule the claims of privilege, or compel Plaintiff to produce a supplemental privilege log. [*Id.* at p. 3–4].

Thus, with this reply, Plaintiff was squarely on notice that the Defendants had not agreed to Plaintiff's privilege objections, that the validity of those objections remained in dispute, and that Plaintiff would therefore have to put forward factual and legal support to establish that each email met all the requirements for the claimed privilege. *See Bridgewater, supra.* Upon receipt of this reply, I scheduled a hearing on Defendants' motion to compel. [DE 92].

Plaintiff responded with a surreply, that included a revised privilege log that identified the emails in question by a Bates number, date, "from", "to", a brief phrase to describe the subject of the communication, and identified the privilege(s) claimed. Plaintiff defended its privilege log as adequate, and did not supply declarations, or any other evidence.[5] Defendants men filed a response to the surreply, that reiterated that it challenged a number of Plaintiff's privilege objections. [DE 97]. Yet again, Plaintiff was given notice that the Defendants challenged Plaintiff's privilege claims.

### e. The November 7th hearing and order

On November 7, 2012, I held a hearing on the motion. Plaintiff advised the Court

---

5. Plaintiff did, in a footnote, provide a title or job description of persons identified on the privilege log as having sent or received the disputed emails. This information certainly is essential to establishing that communications are protected by the attorney-client privilege or work product doctrine. Most often however, this alone will not be enough information to allow a person reading a privilege log to understand that a privilege claim is well-taken.

that it had carried its burden to establish its privilege claims with its privilege log, as that log identified the emails as communications between Plaintiff representatives and Plaintiff's counsel, making it "self-evident" that those communications were protected by the attorney-client privilege. When I inquired about counsels' conferral about the disputed privilege claims, I learned that Plaintiff had simply produced its privilege log, and Defendants had simply responded that the log did not satisfy them that the items listed on that log were in fact privileged. An in-depth discussion between counsel had not occurred. This clearly was *not* a meaningful "meet and confer" process regarding privilege claims. I left the courtroom and instructed counsel to discuss each email on the log, one-by-one, with Plaintiff providing factual and legal support for each element of the privilege claimed, and instructed Defendants to identify any element for which they thought there was insufficient proof, so that Plaintiff might respond. When counsel completed this discussion, I reconvened the hearing, and was informed by Defendants that they had been persuaded that 16 of the emails were protected by privilege, but that they were unpersuaded as to the remaining 19. Regarding those emails, Defendants pointed out that nearly all were between representatives of Plaintiff, and Plaintiff's outside general counsel James Meyer, and that Defendants had only Plaintiff's counsel's word that these communications were made for the purpose of providing Plaintiff legal advice, rather than business advice.[6] Plaintiff had not come to the hearing with any evidence, be it declarations or witnesses, to establish that this was the case. Rather than put forward any proof, Plaintiff asked that I simply read through each of the emails, *in*

*camera*, and determine myself whether each email qualified as an attorney-client communication. I declined to do so. Rather, I found that Plaintiff had not carried its burden to prove that the remaining 19 emails satisfied all the elements of a privilege claim; I overruled those privilege objections, and I ordered Plaintiff to produce the emails to Defendants. I memorialized that ruling in a subsequent written order [DE 100]; Plaintiff now asks that I reconsider and vacate that Order.

## 2. Analysis

In its motion [DE 103], Plaintiff contends that it was not until the November 7th hearing that it understood that Defendants questioned whether some of the emails between attorneys might have been made for a business, rather than a legal, purpose. With its motion, Plaintiff filed a declaration by James Meyer, Esq. Plaintiff's outside general counsel, that offers information about the content of and purpose behind those emails. [*See* DE 103–1]. Plaintiff justifies its after-the-fact production of this declaration, stating it would have produced it earlier, or would have had Mr. Meyer attend the November 7th hearing, had Defendants told Plaintiff in advance of that hearing that it questioned whether the purpose of the communications was legal advice. Plaintiff further contends that it was entitled, at the November 7th hearing, to an *in camera* inspection of the disputed emails, and that it was clear error and a manifest injustice for the Court to not conduct such a review, and to overrule Plaintiff's privilege objections.

 A motion for reconsideration "is an extraordinary remedy to be employed sparingly." *Colomar v. Mercy Hospital,*

---

**6.** For the attorney-client privilege to attach, it is fundamental that the party claiming privilege show that the primary purpose of the communication was to obtain legal advice, not business advice. *In re Denture Cream Products Liability Litigation,* No. 09–2051–MD, 2012 WL 5057844, *6 (S.D.Fla. Oct. 18, 2012) (collecting cases).

*Inc.*, 242 F.R.D. 671, 684 (S.D.Fla.2007) (citation omitted). To receive reconsideration, a party must "satisfy a high burden involving facts or law of a strongly convincing nature that would induce a court to reverse its prior decision." *1550 Brickell Assoc. v. QBE Ins. Corp.*, No. 07–22283, 2010 WL 2775064, *1 (S.D.Fla. July 13, 2010). Three grounds justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. *Id.*; *Colomar, supra.*; *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 477 (S.D.Fla.2002).

■ Regarding the first ground, Plaintiff does not claim that since the November 7th hearing, there has been an intervening change in controlling law. Plaintiff does, however, claim that Mr. Meyer's declaration is newly discovered evidence, and that this justifies reconsideration. I can not agree. Mr. Meyer, Plaintiff's outside general counsel, an author or recipient of most of the disputed emails, was at all times an available source of information and evidence about those emails. The Eleventh Circuit Court of Appeals has made clear that the tardy submission of available evidence can not justify reconsideration:

> We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.

*Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir.1997). Plaintiff has made no showing that Mr. Meyer was unavailable before November 7th; thus, this ground for reconsideration fails.

This leaves the third and final ground for reconsideration: a finding that the Court committed clear error or that the ruling is a manifest injustice. In its motion, Plaintiff makes a multi-step legal argument—never before presented to this Court—to support its claim that the November 7th Order is a clear error or a manifest injustice. The argument can be summarized as follows: First, Plaintiff contends that the Florida law of attorney-client privilege governs Plaintiff's claims of that privilege here.[7] As noted, Plaintiff's complaint invokes federal question jurisdiction (for its trademark and unfair competition claims), and diversity and supplemental jurisdiction (for its contract and tort claims). In its motion for reconsideration, Plaintiff contends that the emails "relate solely to the breach of the Franchise Agreement and breach of Guaranty claims" [DE 103, p. 10]; according to Plaintiff, Florida law of attorney-client privilege thus governs its claims.[8] Plain-

---

7. On its log Plaintiff had claimed the attorney-client privilege for each disputed email, but claimed work product designation for only some of those documents. In its motion, Plaintiff addressed its argument to just the attorney-client claims.

8. This choice of law argument requires a rather sophisticated analysis. Rule of Evidence 501 directs when federal or state law of privilege applies; the Rule is always the starting point of any privilege analysis in federal court. Where, as here, jurisdiction is premised on both federal question and diversity jurisdiction, a determination of the applicable

law can be complicated. *See Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.1992); *State Farm v. Kugler*, 840 F.Supp.2d 1323, 1329–30 (S.D.Fla.2011). The outcome of this choice of law analysis is especially significant here, where a corporation claims attorney-client privilege, as Florida mandate a heightened burden of proof to establish those claims. *Compare United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir.1990) (elements of federal common law of privilege) *with* Fla. Stat. § 90.502 (the codification of the Florida attorney-client privilege) and *Southern Bell Telephone Co. v. Deason*, 632 So.2d 1377, 1383 (Fla.1994) (setting forth the

tiff references Mr. Meyer's declaration, which it claims establishes that all communications with Mr. Meyer were for the purpose of legal advice, not business advice. Plaintiff then cites a number of Florida decisions for the proposition that under Florida law an *in camera* review of disputed privileged documents is mandatory, and that the use of declarations would not be appropriate here. [*See* DE 103, pp. 14–17].[9] According to Plaintiff, this new legal authority and factual support leads to the conclusion that: the emails are protected from disclosure by the attorney-client privilege, the Court committed clear error in not reviewing those emails *in camera*, and the order compelling production of those emails was a manifest injustice.[10]

■ These arguments were entirely available to Plaintiff when it filed its memoranda and at the hearing. This is exactly the kind of legal argument, and evidence, that Plaintiff should have presented in its memoranda in response to Defendants' motion to compel. I repeatedly warned Plaintiff that it had to come forward with factual and legal support for each privilege claim, but it did not do this. Rather, it

doggedly insisted that it could meet its burden of proof with a privilege log, contending that the correctness of its claims was "self-evident."

■ To demonstrate clear error, or manifest injustice, "the movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived." *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401 F.Supp.2d 1270, 1283 (S.D.Fla.2003) (citation omitted); *see also Colomar*, 242 F.R.D. at 684 ("to the extent Plaintiff ... tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration"); *Disabled Americans*, 211 F.R.D. at 477 ("A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made.")(quotation marks and citation omitted). Rather, clear error or manifest injustice occurs where the Court "has patently misunderstood a

elements of corporate claim of attorney-client privilege). Here, Plaintiff's choice-of-law analysis is premised on its claim—again, never presented to the Court until the motion for reconsideration—that the arguably privileged emails are relevant only to Plaintiff's state law claims. To address this, the Court would have to consider the content of each email in light of each federal and state law claim, to decide whether each email only bears upon the state claims. This is the kind of review that would be particularly difficult for a court to undertake *ex parte*.

9. If Florida law mandates *in camera* review— a question I do not attempt to answer here— the Court would then have to consider whether this is a rule of substantive law that this Court must follow, or a rule of procedure that does not bind this Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

10. Plaintiff also reiterates an argument, that it made earlier, that its privilege log met the requirements of Local Rule 26.1(g)(3)(B), and therefore Plaintiff did not have to provide any more information, specifically declarations, to support its privilege claims. [DE 103, pp. 2, 20]. It appears that throughout these proceedings both parties have fundamentally misunderstood the purpose of a privilege log. A privilege log should identify the documents or other communications for which a privilege is invoked, and provide sufficient detail to allow an opposing party and the court to determine whether the document is at least potentially protected by privilege. *See* Fed. R.Civ.P. 26(b)(5)(A)(ii); *CSX Transp.*, 1995 WL 855421 at *3. In some instances, an entry on a privilege log is all that is needed to establish a privilege. More often, more information is needed, by way of declaration, or testimony, to make out each element of a privilege.

party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.... Such problems rarely arise and the motion to reconsider should be equally rare." *Compania de Elaborados de Cafe, supra; Disabled Americans, supra* (citations and quotation marks omitted). Plaintiff makes no such claim here.

In denying Plaintiff's request for reconsideration, I acknowledge that some, or all, of the disputed emails may, in fact, satisfy all the elements of either the Florida or federal common law of attorney-client privilege. However, after the very protracted and time-consuming litigation of what should have been a fairly straightforward matter, and after the multiple warnings I gave Plaintiff of its obligation to carry its burden of proof, it is entirely unreasonable for Plaintiff to now put forward legal analysis and factual support and expect the Court to engage in this analysis. Certainly, Plaintiff has not shown that the Court made a clear error, or that it was a manifest injustice for the Court to overrule Plaintiff's privilege objections, when Plaintiff abjectly failed to provide legal and factual support for its privilege claims.

Plaintiff's efforts to shift the blame to Defendants shows a fundamental misapprehension of what it means for a party to have the burden of proof. To have the burden of proof means that the party claiming a privilege knows, at all times, that absent a stipulation from the opposing party, it must produce specific factual support and legal authority to establish that each element of the applicable attorney-client privilege applies to each communication; without this, the privilege claim will fail.

Unfortunately, far too many parties do what Plaintiff did here: identify a communication in which an attorney is a party, make a conclusory assertion that it is pro- tected by the attorney-client privilege or the work product doctrine, and assume that the opposing parties and the Court will automatically agree that this is so.

■ To review, what the party asserting a privilege must do, at minimum, is the following: (1) Bates stamp each document or otherwise specifically identify each communication; (2) start with Rule of Evidence 501, and if necessary proceed to case law, to determine what law of privilege governs the communication, and identify the elements of that privilege; (3) for each document or communication identify the evidence that establishes that each element of the privilege applies to that communication; (4) prepare a privilege log that has enough information about the communication so that the opposing party or the Court can determine, at minimum, that the claimed privilege might apply; and (5) engage in a meaningful give-and-take conferral with opposing counsel, where both parties have before them the privilege log, the elements of the applicable privilege law, and the party asserting the privilege has before him or her the allegedly privileged communication and the evidence that establishes each element of the privilege, so that questions can be answered. If at that point, the parties disagree about the applicable privilege, then the dispute should be briefed for the Court.

### 3. Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration of Portions of the November 18, 2012[sic] Order Requiring Disclosure of Privileged Communications and/or for In Camera Inspection [DE 103], is **DENIED.**